UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:25-cr-461-JSM-AEP

KEVIN LUKE

## UNITED STATES' SENTENCING MEMORANDUM

For most of his 37 years of service in the United States Army, Kevin Luke served with a Top Secret security clearance and was entrusted with some of the nation's most sensitive secrets. The United States placed exceptional trust in Luke for a very long time. Luke betrayed that trust. He did so when he deliberately sent an individual (hereinafter, "Person 1") classified information disclosing the intended targets of an upcoming planned U.S. military operation, the scheduled date and the methods of execution, and the overall objective of the mission. The Defendant's motive for engaging in this illegal, unauthorized, and dangerous behavior? To impress and court Person 1. That attempt at courtship put the nation's secrets—and the safety of his fellow servicemembers and citizens—at risk.

Because Luke committed a serious offense that endangered the national security of the United States, a meaningful sentence of imprisonment is warranted based on a consideration of all the sentencing factors. The United States therefore recommends a guidelines sentence, a term of supervised release of three years, and a fine of $15,000.

## PROCEDURAL BACKGROUND

On October 7, 2025, Luke pleaded guilty, pursuant to a plea agreement, to an Information charging him with one count of unlawful retention of national defense information ("NDI"), in violation of 18 U.S.C. § 793(e).

In the plea agreement, the parties agreed that a two-level increase under USSG§3B1.3 was appropriate because Luke abused a position of public trust in a manner that significantly facilitated the commission and concealment of the offense. Doc. 5 at 3. The Court accepted Luke's guilty plea and adjudicated him guilty of the offense on October 24, 2025. Doc. 17.

## ARGUMENT

In sentencing a criminal defendant, the court must consider the advisory guidelines range and the factors set forth in 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38, 49-50 (2007); *United States v. Rosales-Bruno*, 789 F.3d 1249, 1253-54 (11th Cir. 2015). The Section 3553(a) analysis begins with the court's consideration of the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). Moreover, the sentence imposed should (1) adequately reflect the seriousness of the offense, (2) promote respect for the law, (3) provide just punishment, (4) afford adequate deterrence, (5) protect the public from future crimes of the defendant, and (6) provide the defendant with any necessary training or treatment. 18 U.S.C. § 3553(a)(2). The court should also consider the kinds of sentences available, any pertinent policy statement, and the need to avoid unwarranted sentence disparities among defendants with similar records who have

been found guilty of similar conduct. 18 U.S.C. § 3553 (a)(3)-(6).

    **a. The Nature and Circumstances of the Offense**

    The nature and circumstances of the instant offense weigh in favor of a guidelines sentence because Luke's criminal conduct was especially serious—it put the national security of the United States at risk and showed a disregard for the sensitive and classified nature of information with which Luke was entrusted. The Supreme Court has noted that "[i]t is 'obvious and unarguable' that *no governmental interest is more compelling* than the security of the Nation." *Haig v. Agee*, 453 U.S. 280, 307 (1981) (citations omitted, emphasis added). And the national defense information that Luke deliberately disclosed was especially sensitive: it included information identifying the number of intended targets in a then-planned U.S. military operation, the scheduled date of that operation, the methods of execution, and the overall objection of the mission. PSR at ¶ 15. Luke's betrayal of the nation's secrets—which disclosed a then-future military operation and put servicemembers at risk—is deeply troubling.

    To ensure the sensitive information about this special operations mission was protected, the information disclosed by Luke was classified as "SECRET Releasable to USA, Five Eyes"—meaning the document was only releasable to authorized nationals of the United States or countries within the Five Eyes intelligence alliance authorized to receive it. *Id*. Luke blatantly ignored the classified designation—a designation designed to protect the sensitive information about special operations missions and intelligence collection methods—and disclosed it anyway. He did so for

3

his own selfish benefit: to look more impressive to Person 1 and give Person 1 a "peak at what [he] do[es] for a living." *Id.*

    b. **The History and Characteristics of the Defendant**

Despite Luke's lengthy service in the military, his "history and characteristics" do not weigh in favor of leniency, for several reasons. First and foremost, as explained above, Luke violated the special trust that the military had bestowed on him. Luke commanded at every echelon (*i.e.*, Battery, Battalion, and Brigade), served as Deputy Commander for the Joint Special Operations Air Component Command, and even obtained the esteemed rank of Colonel. Notwithstanding these positions of power and trust, he put our nation's most sensitive secrets at risk.

And conduct charged in the Information—sending a photo containing national defense information—was not the only time that Luke mishandled classified information and put our nation's sensitive information at risk. During a court-authorized search of Luke's home on December 12, 2024, agents found multiple other documents that contained information with SECRET classification markings—including 4 classified emails and a spiral notebook with a SECRET sticker. *See* Exhibit A. Luke did not have authorization to retain these materials in his residence, and we do not know, and may never know, who, besides Luke, had access to these additional classified materials. Evidence of additional mishandling of national security information weighs against imposing a below-guidelines sentence and suggests that the Defendant had a history of unlawfully retaining this sensitive information.

Beyond unlawful retention and transmission of classified national defense information, this is not the first time that Luke has put himself and his own desires above the law. The Presentence Investigation Report references Luke's other criminal conduct—which includes arrests for theft, battery, domestic violence, and violation of pretrial release. PSR at ¶¶ 38-40. Luke's arrest for theft at Publix is telling. In August and September 2018, he was observed on video placing wine in a bag and failed to pay for it—not once, but *five* times. *Id.* at ¶ 38. When he was confronted about his criminal conduct, his only concern was for himself, and his security clearance—the very clearance that afforded him access to the secrets he so quickly (and carelessly) disclosed in this case. *Id.* at ¶ 38. And when questioned by the Department of Defense about his arrest, Luke denied taking anything from the store and claimed he was going to file a lawsuit against Publix and the county. *See* Exhibit B.

His arrests for battery and violation of release relating to domestic violence are equally concerning. Indeed, on July 11, 2019, Luke physically struck his victim. *Id.* at ¶ 39. Undeterred, he did it again on July 27, 2019—which resulted in a domestic violence arrest. *Id.* at ¶ 40. Relatedly, Luke was also the subject of a Petition for Injunction for Protection against Stalking. *Id.* at ¶ 54. In August 2019, Luke deliberately ignored a court's no-contact order when he sent his victim a Facebook message. *Id.* He then made false statements about his victim to her friends and sent his victim's neighbors letters with harassing and false accusations and pictures. *Id.* Luke also even encouraged his son (whom he shares with his victim) to post

5

derogatory statements about his victim on Facebook on more than one occasion. *Id*. Put simply, Luke has a demonstrated pattern of believing that the rule of law does not apply to him.

To the extent the Court is inclined to vary downward based on Luke's military service, Luke's admission that he abused a position of public trust and used a special skill in a manner that significantly facilitated the commission and the concealment of the offense, *see* PSR at ¶ 7, underscores that this Court should not grant him leniency based on his history and characteristics, and particularly his military service. Indeed, the Eleventh Circuit has stated that "the reasoning behind § 3B1.3 is that defendants who abuse a position of trust deserve more severe punishment, not less." *United States v. Howard*, 28 F. 4th 180, 212 (11th Cir. 2022) (finding that district court had abused its discretion in granting substantial downward variance based, in part, on defendant's loss of medical license after conviction for healthcare fraud); *see also United States v. Steele,* 178 F.3d 1230, 1239 (11th Cir. 1999) (holding that it was an abuse of discretion for district court to grant downward departure based on the loss of a pharmacist license when that departure would negate an enhancement imposed for defendant's abuse of his position as a pharmacist); *United States v. Ford*, 288 F. App'x 54, 61 (4th Cir. 2008) (district court did not err in applying abuse-of-trust enhancement because defendant, an NSA employee, would not have been able to remove classified documents from his office without detection if he had not held a top-secret security clearance).

The same is true here: any leniency afforded to Luke would negate the

6

enhancement imposed for Luke's abuse of trust. After all, Luke would not have been able to disclose classified information had he not held a security clearance that authorized him to access classified information related to the national defense of the United States. PSR at ¶¶11-13.

Accordingly, Luke's history and characteristics warrant a within-guidelines sentence.

   c. **General Deterrence**

The Section 3553(a) factors that the court must consider encompass both specific and general deterrence. *See Howard*, 28 F.4th at 208. Though Luke will likely never lawfully access classified information again, specific deterrence is important in this case. In addition to the information he sent to Person 1, for which he pleaded guilty, Luke unlawfully kept multiple physical and electronic documents bearing classification markings in his home, as revealed by a court-authorized search. *See* Exhibit A. Moreover, having had access to highly classified information for many years, Luke likely knows many classified facts, the unauthorized disclosure of which could further damage U.S. national security. Although Luke failed to honor his obligation to protect national defense information on multiple occasions to date, a within-guidelines sentence will serve to deter him from unlawfully disclosing such information in the future.

General deterrence is a particularly compelling factor under the facts of this case because Luke was a highly trained professional who abused his professional privileges and special access to commit his crime. After all, as a high-level

commissioned military officer assigned to work on the most sensitive military operations, Luke's sentence will very likely reverberate through the ranks of the Department of Defense, particularly the Special Operations and Military Intelligence communities at U.S. Southern Command ("USSOCOM") and U.S. Central Command ("CENTCOM"). As the Eleventh Circuit opined in *United States v. Howard*, when a conviction is obtained in certain kinds of cases, "one of the primary objectives of the sentence is to send a message to others who contemplate such schemes that their crime is a serious one that carries with it a correspondingly serious punishment." 28 F. 4th at 209 (quotation marks and citation omitted). The Court can (and must) send a message to Luke and would-be perpetrators of similar crimes, as well as to the public, that those who place the nation's most sensitive information at risk will face meaningful prison time.

**d. The Need to Avoid Unwarranted Sentence Disparities**

That leads to the last salient consideration: "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Luke is facing a term of imprisonment of up to 10 years. The United States is requesting a sentence that is well below the potential statutory maximum and in line with other sentences in cases involving similar charges. While cases involving the unlawful retention and transmission of classified national defense information are thankfully rare, analogous cases serve as valuable touchstones.

In cases in which members of the military or law enforcement have pleaded

8

guilty to violation of Section 793(e) for unlawful retention of SECRET information, they have received sentences comparable or even higher than the guidelines range sentence which the Government advocated for in this case. *See, e.g.*, *United States v. Bishop*, Case No. 1:14-cr-00329-LEK (D. Haw. 2014) (U.S. Army Special Forces reserve officer with U.S. Pacific Command who maintained a clearance emailed a classified attachment to a person and retained multiple additional classified documents sentenced to 87 months' imprisonment; *United States v. Sachtleben*, Case No. o 1:13-cr-00200 (S.D. Ind. 2013) (former bomb technician who maintained a clearance disclosed NDI concerning a disrupted suicide attack and retained a Secret intelligence report at his residence sentenced to 43 months' imprisonment); *United States v. Malki*, Case No. 07-CR-570 (E.D.N.Y. 2008) (military intelligence interpreter with clearance who retained multiple classified documents sentenced to 108 months' imprisonment).

Even for defendants who only retain classified or national defense information (unlike Luke, who transmitted national defense information), or who are defense contractors and not long-serving military officers, sentences imposed for violations of Section 793(e) in those cases are comparable to the Government's requested sentence. For example:

- In *United States v. Weldon Marshall*, the defendant was sentenced to 41 months' imprisonment for retaining Secret-level information on U.S. ground operations in Afghanistan. Case No. 3:17-cr-1 (S.D. Texas 2017).

- In *United States v. Michael Ray Aquino*, the defendant unlawfully retained classified U.S. NDI relating to the Philippines that an FBI employee provided to him and was sentenced to 46 months' imprisonment. Case 2:05-cr-00719 (D.N.J. 2007).

- In *United States v. Robert Birchum*, the defendant unlawfully retained—but, unlike Luke, did not disclose—documents classified at the TOP SECRET level in his residence and was sentenced to 36 months' imprisonment. Case No. 8:23-cr-32-KKM-TGW (M.D. Fl. 2023).

- In *United States v. Nghia Pho*, the defendant took TOP SECRET information home from his NSA workplace, claiming that he hoped to make use of the information in his performance evaluation, and was sentenced to 66 months' imprisonment. Case No. 1:17-CR-00631-GLR (D. Md. 2018).

- In *United States v. Kenneth Ford*, the defendant unlawfully retained classified documents on the last day of work at the NSA, claiming that the materials would help him with his new job, and was sentenced to 72 months' imprisonment. Case No. 8:05-cr-00098-PJM (D. Md.), *aff'd*, 288 F. App'x 54 (4th Cir. 2008).

Accordingly, a within-guidelines sentence is warranted.

e. **The Imposition of a Fine is Required and Warranted**

This Court must impose a fine unless the Defendant can demonstrate that he

is unable to pay. *See United States v. McGuinness*, 451 F.3d 1302, 1307 (11th Cir. 2006). The relevant statutory maximum fine is $250,000, and the guidelines range is $15,000 to $150,000. PSR at ¶ 84; 18 U.S.C. § 3571(b); U.S.S.G. § 5E1.2(c)(3). According to undisputed facts in the PSR, the Defendant has the ability to pay a fine. PSR at ¶ 73.

What's more, the Defendant's income and financial resources support imposition of a fine. His net worth is at least $452,283. *See* 18 U.S.C. § 3572(a)(1); U.S.S.G. § 5E1.2(d)(2). This estimate includes a conservative valuation of Luke's real property at $386,615. Luke's assets also include $5,589 in a Thrift Savings Plan retirement account. *Id.* In addition to real property, the Defendant has two vehicles—a 2006 BMW and 2024 Toyota Grand Highlander. *Id.* The Defendant receives over $10,186 in monthly income, and private counsel represents him in this case.

The Court shall also consider the need for the combined sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence. *See* U.S.S.G. § 5E1.2(d)(1). As set forth above, the relevant sentencing factors warrant a fine within the guidelines range.

Because the Defendant has the ability to pay, and considering the factors outlined in 18 U.S.C. § 3572, the Court should impose a fine. The United States requests that this Court order Luke pay a fine of at least $15,000. In light of his assets, the fine should be payable within 30 days of entry of the judgment.

## CONCLUSION

For all the reasons above, the United States seeks a meaningful sentence of incarceration, within the guideline range. Luke's crime was deliberate and calculated. And most fundamentally, it put Luke's fellow service members and his country at risk.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By:  /s/ *Lindsey Schmidt*
     Lindsey Schmidt
     Assistant United States Attorney
     United States Attorney No. 222
     400 N. Tampa St., Ste. 3200
     Tampa, FL 33602-4798
     Telephone: (813) 274-6000
     Facsimile: (813) 274-6358
     E-mail: lindsey.schmidt@usdoj.gov

     /s/ *Leslie Esbrook*
     Leslie Esbrook
     Trial Attorney
     Counterintelligence and Export Control Section
     National Security Division
     U.S. Department of Justice
     950 Pennsylvania Ave., NW
     Washington, DC 20530
     Telephone: (202) 616-3321
     E-mail: leslie.esbrook@usdoj.gov

U.S. v. Luke                                              Case No. 8:25-cr-461-JSM-AEP

# CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Mark O'Brien

                By:   */s/ Lindsey Schmidt*
                      Lindsey Schmidt
                      Assistant United States Attorney
                      United States Attorney No. 222
                      400 N. Tampa St., Ste. 3200
                      Tampa, FL 33602-4798
                      Telephone: (813) 274-6000
                      Facsimile: (813) 274-6358
                      E-mail: lindsey.schmidt@usdoj.gov

# EXHIBIT A

FD-597 (Rev 8-11-94)  Page 1 of 2

## UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION
### Receipt for Property Received/Returned/Released/Seized

File # 377J-TP-4000881

On (date) 12/12/2024

item(s) listed below were:
- ☐ Received From
- ☐ Returned To
- ☐ Released To
- ☒ Seized

(Name) _____

(Street Address) _____

(City) _____

Description of Item(s):

1. 1 Silver iphone 15 Pro max
2. 1 Black iphone
3. 1 Dell Latitude 5501 SIN 34TCH53 - Centcom Property
4. Cords and accessories from item 3
5. 3 CD's/DVD's from bookshelf drawer
6. 5 CD's/DVD's from display case drawer
7. 1 Black tablet SIN TI0P14MNS08885
8. 1 Silver Samsung tablet
9. 1 Sony voice recorder
10. 1 Toshiba 2TB Hard drive SIN 44HTBWDET188
11. 1 Toshiba 2TB hard drive SIN 24SATWHHT18B
12. 1 Seagate 4TB hard drive SIN NA7PJXQD
13. 1 Toshiba 2TB hard drive SIN 24SATUHIT18B
14. 1 US Army Thumb drive
15. 1 Pink & gray flash drive
16. 1 Blue Distinctive HR flash drive
17. 1 Beige notebook
18. 1 TOSHIBA LAPTOP S/N 2CC92212Q
19. 1 TOSHIBA LAPTOP S/N 26066550K

Received By: SA Ly Duy (Signature)   Received From: N/A (Signature)

FD-597 (Rev. 4-13-2015)

Page 2 of 2

# UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION
### Receipt for Property

Case ID: 377J-TP-4000881

On (date) 12/12/2024

item,(s) listed below were:
- [x] Collected/Seized
- [ ] Received From
- [ ] Returned To
- [ ] Released To

(Name) _____

(Street Address) _____

(City) _____

Description of Item (s):

20. 1 Courier bag, black
21. 1 Laptop bag
22. 2 classified emails
23. 2 classified emails
24. 1 green spiral notebook with Secret sticker

Received By: SA Ivy Drupp (Signature)

Printed Name/Title: Ivy Drupp / Special Agent

Received From: N/A (Signature)

Printed Name/Title: _____

# EXHIBIT B



**UNITED STATES CENTRAL COMMAND**
7115 SOUTH BOUNDARY BOULEVARD
MACDILL AIR FORCE BASE, FLORIDA 33621-5101

CCJ3-F                                                                                                    18 March 2020

MEMORANDUM FOR Department of Defense (DoD) Consolidated Adjudications Facility's (CAF).

SUBJECT: Mr. Kevin C. Luke ▮▮▮▮▮ ), details of September 8, 2018 incident of false arrest and charged for petit theft

1. On Saturday, September 8, 2018 while loading my paid groceries into my car in the Publix parking lot located in Parrish, FL, I was approached by the store manager ▮▮▮▮▮ y ▮. ▮▮▮▮▮ who questioned me about paying for my groceries. I showed ▮▮▮▮▮ r my receipt and then she stated that there were other incidents where I had entered her store and did not pay. I informed ▮▮▮▮▮ r that I never took anything from Publix without paying for it. ▮s. ▮▮▮▮▮ r stated that she had it on video and asked me to come and view. I informed her that I would be happy to view it because I knew I hadn't taken anything whatsoever.

2. After entering Publix and waiting in ▮▮▮▮▮ s office for several minutes, I asked if I can see the video, and ▮▮▮▮▮ r informed me that I could see it as soon as the police arrive. Once the police arrived, one officer went to view the video while the other officer stood by me. When the officer who viewed the video returned, he asked me if I had anything to say, and I told him that I would like to see the video and he stated that there is no need for me to see it because he has already seen it. The officer asked me again if I had anything to say, and I told him that I haven't taken anything from the store. It was at that time when I was placed under arrest.

3. I obtained criminal defense attorney ▮▮▮▮▮ r who recommended that I enter a plea of not guilty and enroll into Manatee County's Veteran's Treatment Court. I have completed this program and the case (18MM026615AM) has been closed however, in February 2019, it was determined that the person Publix identified as me being in the video was in fact someone else of similar resemblance. Publix has since dropped the charges. Since my wife has filed for divorce on August 1, 2019, my attorney wants to wait until the divorce before filing a lawsuit against Publix and the county.

KEVIN C. LUKE
GS-14, DoD AF Civilian
Chief, Global Integration Branch